**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Case No. 21-CR-00188-RDM** |
| | ) | |
| PAUL ALLARD HODGKINS | ) | |
| | ) | |
| Defendant. | ) | |

<u>**REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO EXTEND TIME FOR**</u>
<u>**NOTICE OF APPEAL**</u>

The Defendant PAUL ALLARD HODGKINS by and through undersigned counsel hereby respectfully submits a reply to the AUSA response filed on August 31, 2021 (Doc. #45) to Mr. Hodgkins' motion to extend time (Doc #40) for filing a Notice of Appeal.

Without any Government agreement or review, Mr. Hodgkins could have filed a notice of appeal by August 6, 2021 - had his former attorney not misinformed Mr. Hodgkins' of his rights. Under Fed. R. App. P. 4(b)(1)(A), Appeal in a Criminal Case, the time Mr. Hodgkins had to file a Notice of Appeal with this Court was within 14 days after "(i) the *entry* of either the judgment or the order being appealed. . . ." (Emphasis added).  Because Mr. Hodgkins missed the deadline, but is within the extension limits, he relies on Court approval.

This Court upon a finding of excusable neglect or good cause as specific criteria listed in Fed. R. App. P. 4(b)(4), may extend the time to file a Notice of Appeal for a period not to exceed 30 days from the expiration of the 14-day time prescribed by Rule 4(b)(4). Regarding the time under Rule 4(b)(1)(A), the judgment order was *entered* into the case docket on July 23, 2021. Mr. Hodgkins objects to the AUSA's response that incorrectly states the judgment

was entered was July 20, 2021. July 20, 2021 was a date of filing, and not the *entry* date

shown in the docket. However, Mr. Hodgkins appreciates the Government's prompt response.

The merits of and causes in any appeal that may be filed are not the issue here. The

undersigned attests that the motion is not frivolous. The AUSA's objection speculates on

perceived merit of an appeal. As stated *supra*, the Government does not have any ability to

raise an objection to a filing of a notice of appeal when it is timely filed. And according to

Fed. R. App. P. 3(c), Contents of the Notice of Appeal, any appeal causes are not part of the

notice. The AUSA's response argues an opinion as to whether the record supports an appeal.

That will in fact be the decision of the Circuit Court. The issue here is not whether Mr.

Hodgkins' appeal will be successful or remanded for further proceedings. And while the

AUSA appears to be arguing for a 28 U.S.C. § 2255 appeal, the AUSA makes no argument

that the requested extension of time causes any issue regardless of the appeal route.

The issue at hand is not about any causes the AUSA speculates will be included in the

appeal. The issue here is whether Mr. Hodgkins as a *pro se* civilian as of August 7, 2021

(regardless of whether he knew that was his status) had good cause or showed excusable

neglect in missing the deadline on August 6, 2021 to file a notice of appeal. The bases for

extra time in filing the notice of appeal are separate from speculative bases for an appeal,

even if both have a commonality on the matter of ineffective assistance of counsel. Is justice

served if Mr. Hodgkins is allowed to preserve his right to file an appeal?  The Defense argues

the answer is "yes."

In review of his "good cause," Mr. Hodgkins attests through undersigned counsel that

despite catching brief mention of the word "appeal" at the sentencing hearing on July 19,

2

2021, that when he asked his former counsel outside the Court that day, the former attorney's answer was that there was no appeal at all available to Mr. Hodgkins.  The AUSA's response insinuates that evidence must be provided for this assertion, with affidavits and hearings. The AUSA's response creates a new District and Appellate Court rule that is not currently in existence for a notice of appeal: that there must be evidentiary hearings, proof, and sworn affidavits. LCrR 47 contains no such requirements. LCrR simply states, "Each motion shall include or be accompanied by a statement of the specific points of law and authority that support the motion, including where appropriate a concise statement of facts."

The Fed R. of Cr. P. Rule 47(b), Form and Content of a Motion, states that for a motion outside a trial or hearing, it must be in writing and state the grounds on which it is based; and must contain the relief sought. The rule goes on to state "a motion *may be* supported by affidavit." The AUSA declares in the response that there must be evidentiary hearings and affidavits, as if this were a 28 U.S.C § 2255 appeal. Unlike the Federal Rules of Civil Procedure's rule on motions and pleadings that follow the *Twombly/Iqbal* standards, the Federal Rules of Criminal Procedure instead only require that some facts be stated. The AUSA provides no counter to the facts presented, where if the instant motion were within Civil Procedure, said facts would be taken as true unless outright countered.

The AUSA wants proof the facts stated are true when that is not the standard under the rules for the extension of time motion at hand. Further, if we applied *Twombly/Iqbal* standards, the facts alleged by Mr. Hodgkins would only need to be plausible on their face, where any allegations go beyond being merely possible or conceivable.

To assuage the AUSA's concern that the facts in the motion are true or plausible, despite their being attested to by virtue of being in the motion, Attachment 1 is a recent email to Mr. Hodgkins from former counsel. Mr. Hodgkins' original email merely asked his former counsel to respond to his new attorney's request for the entire case file that Florida's Professional Conduct rules require be transferred. Mr. Hodgkins sent the request after former counsel refused to acknowledge the undersigned attorney's request for all the case documents; written correspondence; emails with the AUSA and Mr. Hodgkins; and his signed attorney-client engagement letter. Neither the undersigned nor Mr. Hodgkins used the word "appeal." Thus, in satisfying plausibility, one can infer from the former counsel's response email that Mr. Hodgkins' discussion with former counsel right after sentencing was about an appeal.  The former counsel latched onto the topic without prompt. Mr. Hodgkins partially heard mention of "appeal" in the sentencing proceeding and asked former counsel about it outside the court. As stated in the motion, former counsel said there was no appeal. The former counsel immediately departed after sentencing for a stateside mobilization post with solid communications without providing guidance for a notice of appeal, or requesting and providing the judgement order or sentencing transcript to Mr. Hodgkins.  Correct advice and provision of the sentencing transcript would have given Mr. Hodgkins the 14-day timeline.

Attachment 1 shows plausibility of the assertions in the motion, as former counsel states "You will not be allowed to withdraw your plea. Your case was concluded when the court sentenced you. You have no right to appeal the sentenced [sic] pursuant to our plea agreement. The case is final and has been final since 20 July."

But regardless of whether the former counsel agreed or not, when Mr. Hodgkins mentioned "appeal" the former counsel was obligated to offer to file the notice or at least provide guidance and to assist in preserving his client's ability to appeal. The former counsel did not change his position on appeal between May 31, 2021 and most recently as shown in the email attachment - former counsel always told Mr. Hodgkins that he had no appeal about anything. The former attorney failed in his duty to accurately advise Mr. Hodgkins. This falls below the standard of reasonableness for attorney conduct. Thus, Mr. Hodgkins has good cause for missing the deadline based on ineffective assistance of counsel.

In support of the motion's allegation of ineffective assistance of counsel, an email from former counsel responding to undersigned counsel's multiple requests for the entire case file and all case email correspondence is at Attachment 2.[1]  The Attachment 2 text by former counsel demonstrated former counsel's disparagement and falsehoods that were meant to intimidate Mr. Hodgkins as an addressee. Counsel received no email with vile invectives and misrepresented the undersigned counsel's length of bar membership. His failure to know the rules in in the statement: "There are no transcripts of which I am aware. Transcripts are generally ordered upon the filing of a notice of appeal that must be done within 14 days. By motion and for good cause, that can be extended an additional 16 days. Those 30 days ran on Saturday when I received Paul's email at 9:30 am here in Qatar."

The above is provided to curtail the Government's asserted rule that the motion must be examined in an evidentiary hearing. Positive light regarding the facts stated in the motion

---

[1] The emails requested on August 19, 2021 did not start arriving until before dawn on September 2, 2021. There are approximately 215 total emails (not 469), with many being automated notices from the Court's electronic filing system. The total time period for he email transmissions was approximately 90 minutes.

should be afforded to Mr. Hodgkins. His attorney's failure to know and convey the rules for appeal, while not conveying that there were transcripts entered in the docket were unreasonable and constitute ineffective assistance of counsel. These facts support Mr. Hodgkins' good cause to request an extension of time.

Continuing with a showing of plausibility in support of good cause for the motion for the extension of time, unreasonableness equals ineffective counsel when the counsel does not abide the client's goals. Under the Florida Rules of Professional Conduct for Attorneys, former counsel acted unreasonably regarding his client and his client's goals. Florida RULE 4-1.2 OBJECTIVES AND SCOPE OF REPRESENTATION paragraph (a) states the "lawyer must abide by a client's decisions concerning the objectives of representation, and, as required by rule 4-1.4, must reasonably consult with the client as to the means by which they are to be pursued." Mr. Hodgkins was clear from the start that he did not want to plead guilty to a felony. The Attachment 3 correspondence with the AUSA office, received in today's email dump from former counsel, shows irresponsible and unauthorized negotiating. No emails on negotiations with the AUSA were forwarded or conveyed to Mr. Hodgkins over the period of March until the end of April 2021 (see Attachment 4) - with the exception that he may have been told once that the AUSA wanted to seek a felony plea.

The former attorney excluded Mr. Hodgkins from the plea discussion. The above is stated to support the veracity and plausibility of what Mr. Hodgkins alleged in the motion to extend time. Between an April 29 email until May 27, 2021, the former attorney conveyed that he had not heard anything while he instead was extensively involved in compressing time. He called Mr. Hodgkins on May 27, 2021 after receiving the AUSA's signed plea offer,

(Doc. #22) and did not send Mr. Hodgkins a copy, and delayed the meeting to review the plea agreement until May 31, 2021 - the day before expiration. It was the former attorney's plan all along to pressure his client, as shown in a collective view of Attachments 3 and 4; the June 1, 2021 expiration date for plea acceptance in Doc #22; and the former attorney's refusal to provide a copy of the plea deal document or set an office call until May 31, 2021.

The high-pressure requirement to sign immediately came solely at former counsel's impetus, designed for the former counsel's own interests and not those of the client. One might wonder whose team Mr. Hodgkins' former attorney was on, or whether he was capable of discerning felonies from misdemeanors.  Mr. Hodgkins' former attorney repeatedly told him that all counts were felonies and Mr. Hodgkins was guilty of every single one. The US News article at Attachment 5 shows that the former attorney not only never intended to defend Mr. Hodgkins, but that he never believed he could defend his client.  This should also be considered in light of the former attorney's misrepresentation of the USSG to Mr. Hodgkins. For unknown reasons the former attorney decided that a Zone D categorized offense could receive probation. Attachment 6 is what he wrote on Jun 2, 2021 when Mr. Hodgkins wanted to withdraw his plea. If there is an analogous term for an attorney holding a client hostage, similar to Stockholm Syndrome, where the "client hostage" (with most funds depleted and nowhere to turn as he is falsely accused of being a terrorist and insurrectionist) develops a positive emotional bond with the captor (believing the captor is right and should be believed), then this case is that. The actions and totality of the circumstances constituted unreasonable behavior and contributed to Mr. Hodgkins missing the deadline to file a notice of appeal.

The Court and AUSA are aware that the former attorney severely compressed time based on his reserve mobilization schedule for July 20-21, 2021. The former attorney was focused on his own interests and deployment timeline, where although he knew by Mar 3-5, 2021 that he was going overseas, former counsel did not tell Mr. Hodgkins when accepting the engagement and client's cash that he would not be around after July 20, 2021. The former attorney accepted engagement knowing he could not proceed to trial defense prior to accepting the engagement with Mr. Hodgkins. It was in former counsel's interests that Mr. Hodgkins plead early and not withdraw his plea.

Knowing that he was going to deploy and that he could not reasonably expect to even support a standard time for a plea agreement, the former attorney was in fact providing limited scope representation.  In Florida, if an attorney is not going to represent a client for an entire matter, then under Professional Conduct Rule 4-1.2 (c), Limitation of Objectives and Scope of Representation, "If not prohibited by law or rule, a lawyer and client may agree to limit the objectives or scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent in writing." No such writing or informed consent was ever discussed or executed.

The Attachment 1 email *responded to Mr. Hodgkins* based on the undersigned attorney's request for the signed engagement. Further, the Florida Bar Rule comments section on "Agreements limiting scope of representation" states that "regardless of the circumstances, a lawyer providing limited representation . . . owes the client all attendant ethical obligations and duties imposed by the Rules Regulating The Florida Bar, including, but not limited to, duties of competence, communication, confidentiality, and avoidance of conflicts of

interest." The high pressure compressed time schedule where former counsel found it acceptable to arrange for a felony charge against his client's objectives, followed by abruptly ending the attorney-client relationship without assisting Mr. Hodgkins in filing a notice of appeal are good cause for Mr. Hodgkins to have missed the deadline. The former attorney's conduct was unreasonable by the Florida Bar Rules and resulted in Mr. Hodgkins not receiving the information regarding any notice required for appeal.

The AUSA did not address excusable neglect. The Government's response should have addressed and raised objections to the factors the Court is likely to consider. Under the *Pioneer* factors for excusable neglect, courts should consider "(1) the risk of prejudice to the other side; (2) the length of the delay and the potential impact on judicial proceedings; (3) the reason for the delay and whether it was within counsel's reasonable control; and (4) whether counsel acted in good faith." *Rogers v. Amalgamated Transit Union*, No. 1:14-cv-01650 (APM), at *3 (D.D.C. May 1, 2017) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs., Ltd. P'ship*, 507 U.S. 380, 395 (1993)). While this reference is to a civil case, a majority of federal circuit courts apply it in civil and criminal filings according to *Stutson v. United States*, 516 U.S. 193 (1996). Further, courts make "an equitable determination after assessing these and another relevant factors." *King v. U.S. Dep't of Justice*, 292 F. Supp. 3d 182, 186-87 (D.D.C. 2017) (citing *Pioneer Inv. Servs. Co.*, 395.) The AUSA's response gave no *Pioneer* reason to oppose an extension of time.

Since the former attorney departed without any offer to assist with an appeal notice filing, Mr. Hodgkins in his *pro se* capacity acted in good faith and took all actions within his reasonable control. He did not go off on vacation or fail to act upon a document in his

possession. As a non-attorney waking up to the false one-sided bond with his former attorney, he took all reasonable steps in his control. While case history shows courts not readily accepting attorney's claims to not know the rules as qualifying for excusable neglect, Mr. Hodgkins is not an attorney, and he did his best using internet resources and input from friends to understand whether he might appeal and if so, when.

The Court should allow for both good cause and excusable neglect in Mr. Hodgkins missing the filing date for his notice of appeal. The Government has brought forth no Pioneer factor or justifiable opposition to good cause. The delay of 30 days after the original deadline for Mr. Hodgkins to file a notice of appeal serves the interests of justice by affording the opportunity to appeal based on the record and merits.

**WHEREFORE**, PAUL ALLARD HODGKINS requests that the Court grant the motion to extend time to file a notice of appeal.

The undersigned also DECLARES no changes to textual content of emails or texts in attachments were made. Any edits involved redactions, adding attachment designation, page format, or whatever magic Acrobat Pro performs in sanitizing and removing hidden metadata from documents, which sometimes causes font adjustment and changes to text clarity.


September 2, 2021                          Respectfully submitted,
                                          /s/ Carolyn A. Stewart

                                          Carolyn A. Stewart, FL Bar No. 1205715
                                          Defense Attorney
                                          Stewart Country Law PA
                                          1204 Swilley Rd.
                                          Plant City, FL 33567
                                          Tel: (813) 659-5178
                                          Email: Carolstewart_esq@protonmail.com

Attachment 1: August 21, 2021 Email

From: **Patrick Leduc** <▊▊▊▊▊▊▊▊▊>
Date: Sat, Aug 21, 2021, 5:32 AM
Subject:
To: Alex Stavrou <▊▊▊▊▊▊▊▊>, Paul Hodgkins
<▊▊▊▊▊▊▊▊▊▊>

Alex:

1.  Please provide a Paul (another) copy of his case file.

2.  Paul, Mr. Stavrou is not obligated to assist you any further.  He was assisting you because I asked him to help you.  It is up to him, but  you have hired a new lawyer who appears to be unaware of Federal Criminal law.    I am unsure what it is you hope to accomplish, but I think you will find out quickly that you are being sold a bill of goods.  In any case, it is up to your new lawyer to secure your property and the United States may choose to hold onto your items until your intentions are made clear.

3.  I put in well over 200 hours on your case.    There are over 460 emails alone related to your case.  If I averaged just 5-10 minutes on each email, that is over 60 hours.  Phone calls and office time with you alone was well over 40 hours.  Just the trip to and from Washington DC was 38 hours.    Your sentencing memorandum alone took over 20 hours of work.  These are conservative estimates.  If I was to charged you billable hours, you would have a bill in excess of $80,000.   We had a flat fee agreement and you knew from DAY 1 what our strategy was going to be.   We executed that strategy, and you came out with a sentenced that several hundred others ONLY WISH they could get.

4.  You will not be allowed to withdraw your plea.   Your case was concluded when the court sentenced you.    You have no right to appeal the sentenced pursuant to our plea agreement.    The case is final and has been final since 20 July.    As for a letter that terminated the representation, this is not family law. The representation technically terminates when you are sentenced and the sentence is final.   However, out of our good will, we wanted to ensure you got your property back and disposed of properly.    Now this is your new attorney's problem.

5.  Paul, I like you.  I went way above and beyond for you and did things for you that I have never done for other clients (for example, getting you with folks who wanted to financially contribute to you) .    I got you surrounded by a support system that was willing to help you .    I feel bad for you because you have no idea how lucky you have been.  Every other person on the floor of the Senate with you is looking at 46 months on the low end.   You got 8 months when the US wanted you to get 18 month.      You need to think very very very carefully going forward.

I am very busy here dealing with Afghanistan and will be back in June.    Please  respect the fact that I am deployed and busy.

*Law Offices Of Patrick Leduc, P.A.*

4809 E. Busch Blvd. Suite 204
Tampa, Florida 33617
(813) 985-4068 Main Line
(813) 333-0424 Fax
Website:  www.leduclaw.org
E-mail: ▊▊▊▊▊▊▊▊▊

Attachment 1: August 21, 2021 Email

----- Forwarded Message -----

**From:** Paul Hodgkins ███████████████████ >
**To:** Patrick Leduc ███████████████
**Sent:** Saturday, August 21, 2021, 04:37:06 AM GMT+3
**Subject:**

Dear Mr. Leduc,

   I fully concur with Mr.Stavrou completing his action to retrieve my property from the government. Those ac ions should con inue.

   Since outside the property action you terminated representation without documenting it, this writing confirms that I am termina ing you as my legal representative. My new attorney is Carolyn Stewart and I ask that you promptly provide the case materials and correspondence she requested in wri ing. And, if you should receive any correspondence related to my case  hat you provide it to Ms. Stewart.

Thank you very much,
 -Paul

**Subject:** Re: Last follow-up after multiple time sensitive requests for the entire client file
**Date:** Wednesday, August 25, 2021 at 2:23:34 AM Eastern Daylight Time
**From:** Patrick Leduc
**To:** CStewart esq
**CC:** Carolyn Stewart, Paul Hodgkins, John Maher, Alex Stavrou

Ms. Stewart:

   On multiple occasions, you have indicated that I was attempting to bully or intimidate. Then you go on with a lot if invective and innuendo about this or that. I reviewed my email to you and the one to Paul on Saturday, and see both as very matter of fact and honest. Nothing sent was intended as what you assert. If offense was taken, please accept my apology.

However, the entire problem is being created by you and the fact that you are a new attorney who has almost no understanding of the Federal system. Your lack of understanding is sending you down a bunch of rabbit holes, and if you would have simply reached out to more experienced attorney's who actually practice law in the Federal system, many of your questions would have been answered already. You are giving your client false hoped for a fee, and that is wrong. An experienced attorney would have ALREADY known many of the answers to the questions you are seeking.

First, everything you are seeking is on PACER and is available to you right now. Second, you are going to be disappointed by DOC 38, since it is a boilerplate form that is signed by the judge out of course. Third: There are no transcripts of which I am aware. Transcripts are generally ordered upon the filing of a notice of appeal that must be done within 14 days. By motion and for good cause, that can be extended an additional 16 days. Those 30 days ran on Saturday when I received Paul's email at 9:30 am here in Qatar. I responded IMMEDIATELY to him and asked Alex to provide him a full file. In short, experienced attorney's would know this already. My obligations to Paul are being met, and being done as timely as humanly possible given where I am where he is. The file has been available to him since Monday, which is the first day available. As you should know, my office is not shuttered, as Mr. Stavrou works out of that location.

Here is what you should know. Capitol Hill Defendants found in the Senate are all being offered a felony (same as Paul)(some more than one felony) with an 8 level enhancement (you might consider obtaining a Federal Sentencing manual for your reference). I was able to get the DOJ to agree to only a 3 level enhancement. You ought to know that my plea deal was adopted at the highest level to include the AG of the United States. That meant that my client was at level 14 vice level 19. Other Capitol Hill defendant are looking at 46 months low end. The AG instructed AUSA Sedky to argue for mid range -18 months. Judge Moss, pursuant to 3553 varied 3 levels and sentenced Paul to low end - 8 months. And you would suggest that is evidenced of malpractice. I would argue that an attorney of 6 months accusing an attorney with over 250 jury trials at both the State and Federal level, and with 30 years of experience is unprofessional on your part.

If you think the plea deal was insufficient, then you ought to know that the United States makes offers with a a take it or leave it attitude. Everything in the plea deal was boilerplate with one exception that did not bother me. That was a provision that required me to agree

Attachment 2 Email

that level 14 was good to go and that I would not object to the PSR.   I was allowed to argue for a variance under 3553, which was my strategy all along, and the judge did indeed vary 3 levels into ZONE B.   Ms. Sedky is a very experienced prosecutor, and the plea deal was arranged over many lengthy phone calls over a period of 3 months.   Being the first felony case to be resolved was something that DOJ had to concur in because my case was going to set the precedent for every one to follow and the stakes were high for both sides.

My strategy paid off to Paul's benefit.  No other Federal defendant who is pleading to a felony will get a sentence better than Paul (nearly 250 others)   We had a very good judge who understood the issues, and the sentence was a fair reflection of the facts.

As for the 469 emails.  That is a process that will take some time, and right now, I have none. I am in the OIC of a facility with over 5500 refugees...we are all volunteering 12 hours shifts in ADDITION to our other duties right now.   I will forward to you any relevant emails in due course, but that will come to you after operations involving USFOR-A have ceased.

While it is good that Paul is getting the benefit of a second opinion, and I am glad you are willing to work with him, I would ask you to work pro-bono, because you should not be charging Paul a fee for simply wasting everyone's time.


Very respectfully,
Patrick



*Law Offices Of Patrick Leduc, P.A.*
4809 E. Busch Blvd. Suite 204
Tampa, Florida 33617



Attachment 3 Email Negotiating

---------- Forwarded message ----------
From: Patrick Leduc<████████████>
Date: On Thu, Sep 2, 2021 at 04:06
Subject: Fw: USA v. HODGKINS
To: CStewart Esq████████████>
Cc:



*Law Offices Of Patrick Leduc, P.A.*
4809 E. Busch Blvd. Suite 204
Tampa, Florida 33617


----- Forwarded Message -----
**From:** Patrick Leduc <████████████>
**To:** Sedky, Mona (USADC)████████████>
**Sent:** Thursday, March 18, 2021, 05:18:01 PM GMT+3
**Subject:** USA v. HODGKINS

Hi Mona:

    You asked me to reach out to you this week, and I know you are busy.

If I had to pick a charge to plead too, I would obviously pick Count 5, but I suspect you would prefer to have us plead to either count 1 or 2.

Let me know what your decision is.   I have gotten to know Paul.   Between us, he is not a bad guy.   No priors, rents a (very) small home in Sulfer Springs, which is one of the poorest areas of Tampa, and is now attending church at the Springs of Tampa Bay (a multi racial Baptist Church).    He is not religious, but I have had some long conversations with him about his life, and to be honest, this process may turn out to be the best thing that has ever happened to him "eternally" speaking.

He has been volunteering at the Humane Society and Metropolitian Ministries (and walking old ladies across the street...OK, that was a joke!).

Attachment 3 Email Negotiating

Point is, the guy is really a humble, soft spoken and a nice guy.   Kind of guy you would want for a neighbor (I am being serious here....so stop laughing!).    Has a full time job in construction.    I'd like him to be able to keep that job.

I know you don't know me at all...but if I thought for a minute that he was not a good guy, I would not be lobbying you like this.  I am a CJA down here, and trust me, as a full time criminal defense attorney, I represent a lot a really bad guys. So any breaks you could cut the guy would be in the interest of justice (between colleagues!)

I will be at Fort Hood from 2-15 April.   I have a jury trial in the Middle District (looks like 4 days) involving Drug Trafficking Conspiracy resulting in Death and my guy has been enhanced (so it is a life min man case) starting on April 19th.   I would look to plea my guy at our hearing on  28 April.    I will turn around and execute any plea offer to you within 24 hours once you send it my way.

I deploy 21 July, but would look for a sentencing date on or about 19/20 July (that is about 90 days for the PSR as we discussed).  I would think that should not be a problem given the lack of complexity in our case.

Been a real joy working with you.    Everyone at DOJ is so professional (to include your collegues down here in the middle district).  Thanks for taking into consideration the above.


Very respectfully and sincerely,
Patrick


*Law Offices Of Patrick Leduc, P.A.*
4809 E. Busch Blvd. Suite 204
Tampa, Florida 33617



Attachment 4 email

**From: Patrick Leduc** ███████████████>
**Date:** Thu, Apr 29, 2021, 9:14 PM
**Subject:** Fw: Paul
**To:** Paul Hodgkins ████████████████>

Paul....

I sent a long email advocating for you.....

This is the response and where I think they are heading.

downward depart 6 levels to avoid any jail.  That is highly unlikely.  (Level 14 to level 8).

I think the judge will depart, but not enough to keep you out of jail.

BLUF:  Low end would mean around 1 year....I would need our judge to

Hang in there....

Yours,
Patrick

*Law Offices Of Patrick Leduc, P.A.*
4809 E. Busch Blvd. Suite 204
Tampa, Florida 33617



----- Forwarded Message -----
**From:** Sedky, Mona (USADC) < ████████████████ v>
**To:** Patrick Leduc < ████████████ >
**Sent:** Thursday April 29, 2021, 06:06:33 PM EDT
**Subject:** RE: Paul

**Subject:** RE: Paul
Attachment 4 email

Thanks for reaching out.  I'm trying to get authorization for him to plead to the 1512(c) felony and with USSG of 17, which after acceptance, would put him at 14.  (BTW many other defendants will likely be tagged with a +8 for relevant conduct/aiding and abetting conduct that caused or threatened physical injury under 2J1.2(b)(1)(B).   I don't mean to sully your client's reputation as a boy scout, but it seems that he has an extensive history with BDSM and similar sexual fetish conduct.

Base Offense Level

U.S.S.G. § 2J1.2                                                                14

Specific Offense Characteristics

U.S.S.G. § 3A1.2(a)               official victim                    +3

---

**U.S.**

# Capitol Rioter's Attorney Calls January 6 Insurrection 'Not Defensible'

BY **JENNI FINK** ON 7/19/21 AT 4:52 PM EDT

SHARE         

 U.S.    CRIME

After his client was sentenced to eight months in prison for his role in the Capitol riot, Patrick Leduc encouraged others to plead guilty because there's no way to defend their actions on January 6.

Paul Hodgkins, who pleaded guilty in June to obstructing congressional proceedings, became the first Capitol rioter to be sentenced for a felony on Monday. The eight months he received was less than the 18 months the Department of Justice wanted to see, but Judge Randolph Moss saw him as deserving of leniency because of his guilty plea and "sincere apology."

"If you want to go in there and you want to defend that, that's not defensible," Leduc told reporters after leaving the courthouse. "I'm sorry. I would say that to all of them that were there. They need to come in, they need to step up, they need to accept responsibility and do what Paul did."

Attach 6

## Patrick LeDuc
+1 813-22███████

Paul....I will spend however much time you need in order to make you feel comfortable with this but understand something I've gotten about 15 messages from other lawyers and All have said that this was a great accomplishment and that you don't realize it right now but you're going to come out the end.... fine

Jun 2 4:12 PM                                    Received

**Reply**                                        **Delete**

Attach 6

## Patrick LeDuc
+1 813-2█████

Paul I've been a practicing attorney for 30 years and I would not have you take a deal it wasn't in your best interest.  I'm not average I didn't make Colonel U.S. Army because I'm average I know what I'm doing and I'm one of the best attorneys in the city and if you ask around people will tell you that so trust me when I tell you this was the right decision.

Jun 2 4:13 PM                                    Received

**Reply**                          **Delete**

Attach 6

**Patrick LeDuc**
+1 813-22███████

I just want you know I did a real deep dive this afternoon in the sentencing iguidelines and I think by this time tomorrow we are gonna be a really good situation and I feel pretty confident that you're never going to go to jail so that's the good news I'll see you tomorrow morning about 1015.  I will get into the weeds with you tomorrow morning explain to you why you're not likely ever gonna go to jail

Jun 2 5:53 PM                                    Received

**Reply**                                    **Delete**