```
                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA


   UNITED STATES OF AMERICA,
                                            Criminal Action
              Plaintiff,                    No. 1:21-cr-0188

       vs.                                  Washington, DC
                                            September 15, 2021
   PAUL ALLARD HODGKINS,
                                            11:35 a.m.
              Defendant.
   _____/


              TRANSCRIPT OF VIDEO STATUS CONFERENCE
           BEFORE THE HONORABLE RANDOLPH D. MOSS
                  UNITED STATES DISTRICT JUDGE




   APPEARANCES:

   For the Government:       MONA SEDKY
                             U.S. Department of Justice
                             1400 New York Ave, Room 7113
                             Washington, DC 20530


   For the Defendant:        CAROLYN STEWART
                             1204 Swilley Road
                             Plant City, FL 33567





   Court Reporter:           JEFF M. HOOK
                             Official Court Reporter
                             U.S. District & Bankruptcy Courts
                             333 Constitution Avenue, NW
                             Room 4700-C
                             Washington, DC 20001
```

**1**  P R O C E E D I N G S

**2**  **DEPUTY CLERK:** This is criminal action 21-188, the
**3** United States of America v. Paul Allard Hodgkins.  The
**4** defendant is appearing by video.  Also by video for the
**5** Government, Mona Sedky; for the defendant, Carolyn Stewart;
**6** and from pretrial services, Shay Holman.

**7**  **THE COURT:** Well, thank you all.  Before we get
**8** going, I want to remind everybody that under the Court's
**9** rules, it's not permissible to record or to rebroadcast
**10** these proceedings, and I'll order that nobody do so.

**11**  I called today's status conference because we
**12** received a telephone call from Ms. Stewart in chambers, she
**13** wanted to talk to me about an issue that had arisen or a
**14** concern that she had.  She indicated that if necessary, it
**15** would be okay to get the Government on the telephone.  I
**16** concluded if there's something to raise, it's appropriate to
**17** raise it on the record in the ordinary course.  And
**18** therefore, I set today's status conference so that
**19** Ms. Stewart could raise whatever concerns she would like to
**20** raise.  So that's why we're here.

**21**  Ms. Stewart, if there's something to raise, I'd be
**22** happy to hear from you.

**23**  **MS. STEWART:** Yes, thank you, Your Honor.  And
**24** good morning, we appreciate your taking this time today.  I
**25** would like to request at this time -- if there is a public

**1** line, I think in the interest of the sensitivity of the
**2** topic, I would like to request that this be closed to the
**3** public at this time.

**4**    **THE COURT:** What is the basis for sealing the
**5** matter at this point?  It's a high standard in this circuit
**6** and elsewhere for sealing matters, particularly matters of
**7** substantial public interest like this case.

**8**    **MS. STEWART:** Well, I think it goes to -- it's
**9** about an attorney, and it's an allegation of committing a
**10** fraud on the Court through a forgery.  So I do that out of
**11** courtesy, knowing that if this goes public he's not here.
**12** But I'm confident that what I have is true.

**13**    **THE COURT:** Well, Ms. Sedky, what's your views on
**14** the question of whether this matter should be sealed or not?

**15**    **MS. SEDKY:** Your Honor, I can't consent to
**16** basically closing the courthouse.  I would need lots of
**17** levels of approvals to be able to consent to something like
**18** that.  My understanding is that there's a six-part test, or
**19** thereabouts, to go about what is de facto sealing the
**20** courthouse.  And although I'm appreciative of wanting to
**21** avoid potential embarrassment, I don't see that that would
**22** warrant it.  If there are medical issues or things like that
**23** and we can perhaps designate certain aspects of the record
**24** to be sealed, I think we could contemplate something like
**25** that.  But I don't feel comfortable consenting to -- I can't

**1**  consent to sealing the -- essentially sealing the
**2**  courthouse, the courtroom.
**3**      **THE COURT:** Ms. Stewart, anything else you wanted
**4**  to add on that question?
**5**      **MS. STEWART:** No, we're okay with it, Your Honor.
**6**  I thought I'd propose it, and the rules are very similar in
**7**  Florida, it's a very high bar.  So if you'd like, I'll go
**8**  ahead and proceed with my issue.
**9**      **THE COURT:** I think you should.  If there comes a
**10** point in which it appears that the Hubbard standards or some
**11** similar standard is satisfied here, you can raise that with
**12** me and suggest that the matter be sealed at that point.
**13**     **MS. STEWART:** Okay.  Thank you, Your Honor.  So I
**14** bring -- I had an issue.  Again, I've been on this matter a
**15** short time, but it seems that there's many times when I kick
**16** over a rock, something bad crawls out.  But as an officer of
**17** the Court, I believed I had a duty to report the following
**18** and not wait until a 2255 as I went through the I'd say very
**19** significant examination of Mr. Hodgkins, timelines, what
**20** happened when.  But I spent 31 years in -- between the Army
**21** and DoD as an intel analyst.  Sometimes it's Malcolm
**22** Gladwell's concept of blank, you're kind of an expert in
**23** something in analysis, and you don't know what it is, but
**24** something's wrong with it.  And that went to Mr. Hodgkins'
**25** signature that's in the Court record on the plea agreement,

1    his pleading.

2            Now, from a number of the things I went through --
3    and I think I intimated it in the previous motion for the
4    direct appeal, there was significant -- at the time he
5    wouldn't have called it that, but I would call it duress.
6    And I thought I was seeing duress.  But I went to a
7    handwriting expert who's been admitted as an expert in a
8    number of federal courts, state courts, local courts and
9    submitted some originals, other documents from the case.  I
10   thought I was going to get back that this was a signature
11   under duress.  Because when I sought out the experts -- and
12   I knew this from some previous will and estate things, that
13   document examiners can see dementia and other things.  Plus
14   I spent a year in Afghanistan working with the forensics at
15   the facility in Parwan where we had about 3,200 terrorists,
16   and I had to go through all the forensic records.

17           I mean, there are a number of things, this is not
18   a topic new to me.  But I was expecting to see duress.  And
19   the handwriting expert came back and said no, this is a
20   forgery.  I will say here -- and I'm not breaking any
21   attorney-client privilege, but I'd asked Mr. Hodgkins, "Did
22   you sign this document?"  I showed him that attachment page
23   without it being attached to the plea agreement, and he
24   looked at it and said, "That doesn't look like anything I
25   would have ever signed.  That's not my signature."  And we

1     went back and forth through all this.

2               I mean, these all add up.  It adds up with the
3     time that the document was submitted.  Mr. Hodgkins was in
4     Mr. Leduc's office.  He believed he signed the document at
5     about 11:40 a.m., because he left at 11:45.  And we can get
6     witness affidavits on that, because he had someone else
7     drive him who was waiting out in the parking lot.  And
8     there's more involved in detail with this, because then when
9     he was about 25 minutes away, he got a call to return
10    because Ms. Sedky had notified Mr. Leduc he had not sent the
11    statement of offense and the signature with that.  So he had
12    to turn around and go back 25 minutes.  So we have call logs
13    to do that and then verify the time he said he left.

14              So how in the world, when he didn't sign the
15    signature, did the document get entered into the Court's
16    system at somewhere around 11:36; meaning he would have had
17    to have signed it at 11:25 in order for Mr. Leduc to leave
18    the room, go to another room, scan it in, get onto the PACER
19    system, upload it, do all the -- do all those kinds of
20    things.  I mean, it takes a few minutes, it's not
21    instantaneous.  But at 11:36 -- I can't answer why this was
22    done, that's the first thing I will say.  I can only
23    hypothesize, I don't know.  My hypothesis is whatever was
24    put as a plea agreement in front of Mr. Hodgkins is not what
25    you all were talking about.

1          I would also say that what concerns me that is
2    before anything came up with the signature, I asked
3    Mr. Hodgkins what happened in that office.  And he -- first
4    of all, Ms. Sedky sent the plea agreement on the 27th.
5    Mr. Leduc never provided that to Mr. Hodgkins, told him to
6    show up in his office on May 31st.  That's what bothered me.
7    But when he showed up, he gave him a packet of paper,
8    blanks, nobody's signature on the back page of anything, and
9    that's what they went through.  I'd state at this point,
10   Your Honor, we don't know what they went through.  We do not
11   know, because Mr. Leduc had Mr. Hodgkins sign the back page
12   of that document and then give it to Mr. Leduc.  Mr. Leduc
13   never returned that document, so we don't know.
14          But when I -- in terms of forgery, it's mind
15   boggling, but that signature occurred at about 11:40, but
16   Mr. Leduc had already uploaded a signature with a document
17   in the system at 11:36.  So all I can say is I have a
18   document examiner, Mr. Curt Baggett, he's nationally known,
19   so we didn't try to go on the cheap side.  I wouldn't say
20   he's overly expensive from my past experience.  I can get
21   the 40-page report that will be an additional expense, and I
22   intend to do that.  But he said he's willing to testify to
23   the fact in this court that his opinion and data are
24   correct.
25          But it's his personal expert opinion that a

**1**  different person authored the name of Paul A. Hodgkins on
**2**  the questioned document.  And I will note the questioned
**3**  document in the notarized version -- the short version I
**4**  have right here states -- that questioned document is
**5**  part -- it's the acceptance of the plea:  "Someone did
**6**  indeed forge the signature of Paul A. Hodgkins on the
**7**  questioned document Q1."  And he's willing to testify to
**8**  that.

**9**      I was floored.  I was hoping to have received this
**10** last Friday or Saturday.  That's part of the delay for the
**11** motion to extend his report date, because these kind of
**12** things keep popping up.  I can't do this without his
**13** presence, and I know that's not what we're arguing here.
**14** But I'm floored, and as an officer of the Court, I feel it's
**15** my duty to report this.  And I now look for your guidance.

**16**     I do have another issue, and I want to be clear,
**17** there's no disparagement at all on Ms. Sedky.  But I
**18** believe, as we proceed with 2255, in fact she may become a
**19** witness, and that would be something for you to determine.
**20** And I say that because of several areas of concern that I
**21** have.  We had an e-mail on -- dealing with the protective
**22** order from back on 1 or 2 April where Mr. Hodgkins had
**23** signed the protective order, his signature needed to be on
**24** that page on May 31st.  Mr. Leduc took off to Fort Hood,
**25** Texas on a short stint of active duty in his reserve status.

**1**  Ms. Sedky contacted him somewhere around the 2nd or 1st of
**2**  April.  I have those e-mails, not all of them, in front of
**3**  me.  And then you had denied the order, so they went back
**4**  and Ms. Sedky corrected the paragraph you noted.  She sent a
**5**  note to Mr. Leduc, and he turned and said, "Good with me,
**6**  just use my client's signature that you already have."
**7**  　　　　　So I just want to point out this is not something
**8**  that just happened one time.
**9**  　　　　　**MS. SEDKY:**  Your Honor, if I could just object
**10** briefly just to throw something out there.  This is all
**11** feeling like substantive 2255 type stuff.  I'm not sure at
**12** all why we're doing this in this venue.  I have nothing to
**13** hide from the Court at all.  All of this will be presumably
**14** fleshed out in another context.  It is not -- I mean, I
**15** appreciate the fact -- I don't mean to disparage
**16** Ms. Stewart.  I understand she's a relatively new attorney
**17** with only several months experience.  And I've been tolerant
**18** of a lot of very strange and unorthodox communications, for
**19** lack of a better word, and I've been not putting that in my
**20** pleadings and not raising it with the Court out of respect
**21** to her.  But this is not -- this isn't a 2255 hearing, and
**22** so I would just object to what we're doing here today.
**23** 　　　　　**THE COURT:**  Fair enough.  So let me go back to
**24** you, Ms. Stewart, and ask you what it is that you're asking
**25** me to do or is it something you felt like you had some

1    obligation to bring this promptly to my attention or are you
2    asking me to do anything?
3            **MS. STEWART:**  I felt an obligation to bring it to
4    your attention and to show there's substance.  I'm not
5    attempting to litigate the 2255 here.  And I frankly just
6    felt as an officer of the Court I needed to bring this
7    forward.
8            **MS. SEDKY:**  If it's helpful at all, I would point
9    out that the Court has made an extensive colloquy -- if we
10   want to get into the substance, where you specifically -- I
11   believe it is on pages eight through 10 of the transcript
12   where you specifically asked Mr. Leduc to look at the plea
13   agreement and validate that that was in fact his signature,
14   and that he had read and understood the agreement.  And so
15   we can get all into that in the context of the 2255
16   proceedings, but I do want the record to reflect just the
17   salacious allegations here.  You know, there was a very
18   extensive colloquy that the Court undertook with
19   Mr. Hodgkins where he had the plea agreement in front of him
20   and validated not only that he understood it, but that he
21   signed the document.
22           **THE COURT:**  Ms. Sedky, that was going to be my
23   next question, which is, Ms. Stewart, you're raising this
24   concern about Mr. Hodgkins' signature, but he was actually
25   under oath when I asked him whether that was his signature,

**1** and he told me it was.  And I actually am concerned that in
**2** some sense, you may be actually putting him in some jeopardy
**3** with these allegations.  I don't know whether there's any
**4** merit to them or not or what happened, but I do know because
**5** I was there that Mr. Hodgkins was under oath and I asked him
**6** whether it was his signature, and he said it was.

**7**     **MS. STEWART:**  Yes, Your Honor.  And he pointed to
**8** the acknowledgement form that went with the statement of the
**9** offense.  I mean, I went back through, and Mr. Leduc
**10** interjected yes, yes, here, here, this, this.  So I don't
**11** know that anybody on your end could have seen what was on
**12** the table.  But Mr. Hodgkins says the acknowledgement form
**13** was his signature.  I can't find where he said the
**14** acceptance -- and that's --

**15**     **THE COURT:**  I don't know whether the
**16** acknowledgement form was the acknowledgement of the
**17** statement of the offense or the acknowledgement of the plea.

**18**     **MS. STEWART:**  Statement of offense.

**19**     **THE COURT:**  You would have to carefully look at
**20** the transcript to know the answer to that question.

**21**     **MS. SEDKY:**  I have the transcript, and I'm happy
**22** to quote you back the Court.  But my strong recollection
**23** from having reviewed it yesterday is that the Court
**24** specifically asked him vis-a-vis the plea agreement whether
**25** it was in fact his signature, and whether he understood and

 1     had reviewed the plea agreement with his attorney.  And the
 2     answer was yes.  And I'm happy to -- I ordered the
 3     transcript, I have a copy of it.  I can pull it up on my
 4     screen, and we can go through it or we can wait until the
 5     2255 motion.
 6              **MS. STEWART:**  I have no problem waiting until the
 7     2255.  And that was actually the crux of my question today.
 8     If nobody objects, we will proceed with this and open 2255
 9     filings since there's not anything overly sensitive.  But
10     again, I went through the transcript, and he acknowledged
11     the signature on his -- the acknowledgement form was his.  I
12     would say none of us know what paper was on the table, if
13     any, that was the acceptance form.  And again,
14     Mr. Hodgkins --
15              **THE COURT:**  It was done by video, so I was holding
16     up papers to him as this was happening.  So I think it
17     says -- I say, "Let me ask you, Mr. Hodgkins, do you have a
18     copy of the plea agreement in front of you?"  And then I
19     think that's what precedes this discussion, if I'm correct.
20     But I don't disagree with the proposition that this is all
21     something that, Ms. Stewart, you're welcome to raise in a
22     2255.  I don't want to prejudge anything.  You're welcome to
23     raise anything that you think is appropriate in that
24     pleading.
25              I have to say, I don't see enough based on what I

 1   know now to think there's anything that I need to do.  I'm
 2   not being asked to do anything at this point.  But if you
 3   think that there's something that needs to be done with the
 4   bar, that's up to you.  If you think there's something else
 5   to raise with me, that's up to you, and you're welcome to do
 6   it.  But I guess I don't feel as though there's anything
 7   that's been put in front of me now where I feel as though
 8   there's any step that I need or should take until all the
 9   facts are properly developed.

10         **MS. STEWART:**  Thank you very much, Your Honor.
11   And that's really what I wanted to hear, because again,
12   something like this -- I never -- nobody I talked to, our
13   experts, said anything about well, you may need to take it
14   to -- starting with a bar, be it Florida or D.C.  But they
15   felt I should inform you.

16         **THE COURT:**  The other thing I would say is the
17   reason the Court does spend a lot of time going through the
18   plea agreement at a plea colloquy with the defendant is just
19   to guard against this type of circumstance, and to make sure
20   that the Court is satisfied that the defendant is aware of
21   the terms of the plea, that the defendant has carefully
22   considered the plea, and that the defendant is making a
23   knowing and voluntary decision to enter the plea.  And that
24   was the reason for the extended plea colloquy in this case,
25   which is the same reason for the extended plea colloquy in

1    every case.  We all go through these details just to make
2    sure that the defendant is making a knowing and voluntary
3    decision.  And in fact, I think I also ask in every plea
4    colloquy -- and I'm sure I did so here as well, whether
5    anyone made any promises that weren't in the plea or whether
6    the person is acting in any way under duress or whether the
7    decision they're making is their own decision voluntarily
8    and knowingly.

9         So I go through that whole process in taking a
10   plea to avoid the risk that maybe there's something that
11   hasn't -- that has happened when the Court wasn't present
12   that could affect the decision.  And I want to hear from the
13   defendant himself or herself in these cases to make sure
14   that I'm satisfied when someone is entering a plea, that
15   they're doing so for the proper reasons.  But as I said,
16   you're welcome to raise anything you think is appropriate in
17   a 2255, and we'll just consider it in due course.

18        **MS. STEWART:**  All right.  Well, thank you very
19   much.  I did not want to just pop this out in something like
20   that, and again receiving other advice to advise you.  So I
21   do very much -- we do very much appreciate your time today,
22   Your Honor.

23        **THE COURT:**  Well, thank you.  Ms. Sedky, anything
24   else you wanted to add today?

25        **MS. SEDKY:**  Nothing, Your Honor.  Thank you.

1     **THE COURT:**  Okay, thank you.  I'll get you an
2  order promptly on your other motion.
3     **MS. STEWART:**  Thank you, Your Honor.
4     **MS. SEDKY:**  Thank you, Your Honor.
5     **THE COURT:**  Thank you.
6  (Proceedings adjourned at 11:56 a.m.)

# C E R T I F I C A T E

I, **Jeff Hook, Official Court Reporter**, certify that the foregoing is a true and correct transcript of the remotely reported proceedings in the above-entitled matter.

**PLEASE NOTE:** This hearing occurred during the COVID-19 pandemic and is therefore subject to the technological limitations of court reporting remotely.

**February 25, 2022**

DATE

Jeff M. Hook

**0**

0188 [1]   1/4

**1**

1 or [1]   8/22
10 [1]   10/11
11:25 in [1]   6/17
11:35 [1]   1/6
11:36 [3]   6/16 6/21
 7/17
11:40 [1]   7/15
11:40 a.m [1]   6/5
11:45 [1]   6/5
11:56 a.m [1]   15/6
1204 [1]   1/17
1400 [1]   1/15
15 [1]   1/5
188 [1]   2/2
19 [1]   16/8
1:21-cr-0188 [1]
 1/4
1st [1]   9/1

**2**

2 April [1]   8/22
20001 [1]   1/25
2021 [1]   1/5
20530 [1]   1/15
21-188 [1]   2/2
2255 [11]   4/18 8/18
 9/11 9/21 10/5
 10/15 12/5 12/7
 12/8 12/22 14/17
25 [2]   6/9 6/12
27th [1]   7/4
2nd [1]   9/1

**3**

3,200 [1]   5/15
31 [1]   4/20
31st [2]   7/6 8/24
333 [1]   1/24
33567 [1]   1/18

**4**

40-page [1]   7/21
4700-C [1]   1/24

**7**

7113 [1]   1/15

**A**

a.m [3]   1/6 6/5
 15/6
able [1]   3/17
above [1]   16/5
above-entitled [1]
 16/5
acceptance [3]   8/5
 11/14 12/13
acknowledged [1]
 12/10
acknowledgement [6]
 11/8 11/12 11/16
 11/16 11/17 12/11
acting [1]   14/6
action [2]   1/3 2/2
active [1]   8/25
actually [4]   10/24

 11/1 11/2 12/7
add [3]   4/4 6/2
 14/24
additional [1]   7/21
adds [1]   6/2
adjourned [1]   15/6
admitted [1]   5/7
advice [1]   14/20
advise [1]   14/20
affect [1]   14/12
affidavits [1]   6/6
Afghanistan [1]
 5/14
again [5]   4/14
 12/10 12/13 13/11
 14/20
against [1]   13/19
agreement [11]   4/25
 5/23 6/24 7/4 10/13
 10/14 10/19 11/24
 12/1 12/18 13/18
ahead [1]   4/8
ALLARD [2]   1/6 2/3
allegation [1]   3/9
allegations [2]
 10/17 11/3
although [1]   3/20
AMERICA [2]   1/3 2/3
analysis [1]   4/23
analyst [1]   4/21
appeal [1]   5/4
APPEARANCES [1]
 1/13
appearing [1]   2/4
appears [1]   4/10
appreciate [3]   2/24
 9/15 14/21
appreciative [1]
 3/20
appropriate [3]
 2/16 12/23 14/16
approvals [1]   3/17
April [2]   8/22 9/2
areas [1]   8/20
arguing [1]   8/13
arisen [1]   2/13
Army [1]   4/20
around [3]   6/12
 6/16 9/1
aspects [1]   3/23
attached [1]   5/23
attachment [1]   5/22
attempting [1]   10/5
attention [2]   10/1
 10/4
attorney [4]   3/9
 5/21 9/16 12/1
attorney-client [1]
 5/21
authored [1]   8/1
Ave [1]   1/15
Avenue [1]   1/24
avoid [2]   3/21
 14/10
aware [1]   13/20
away [1]   6/9

**B**

back [11]   5/10 5/19
 6/1 6/12 7/8 7/11

 8/22 9/3 9/23 11/9
 11/22
bad [1]   4/16
Baggett [1]   7/18
Bankruptcy [1]   1/23
bar [3]   4/7 13/4
 13/14
based [1]   12/25
basically [1]   3/16
basis [1]   3/4
become [1]   8/18
better [1]   9/19
blank [1]   4/22
blanks [1]   7/8
boggling [1]   7/15
bothered [1]   7/6
breaking [1]   5/20
briefly [1]   9/10
bring [4]   4/14 10/1
 10/3 10/6

**C**

call [4]   2/12 5/5
 6/9 6/12
called [2]   2/11 5/5
came [2]   5/19 7/2
can [11]   3/23 4/11
 5/13 6/5 6/22 7/17
 7/20 10/15 12/3
 12/4 12/4
carefully [2]   11/19
 13/21
CAROLYN [2]   1/17
 2/5
case [4]   3/7 5/9
 13/24 14/1
cases [1]   14/13
certain [1]   3/23
certify [1]   16/4
chambers [1]   2/12
cheap [1]   7/19
circuit [1]   3/5
circumstance [1]
 13/19
City [1]   1/18
clear [1]   8/16
client [1]   5/21
client's [1]   9/6
closed [1]   3/2
closing [1]   3/16
colloquy [6]   10/9
 10/18 13/18 13/24
 13/25 14/4
COLUMBIA [1]   1/1
comfortable [1]
 3/25
committing [1]   3/9
communications [1]
 9/18
concept [1]   4/22
concern [3]   2/14
 8/20 10/24
concerned [1]   11/1
concerns [2]   2/19
 7/1
concluded [1]   2/16
conference [3]   1/9
 2/11 2/18
confident [1]   3/12
consent [3]   3/15

 3/17 4/1
consenting [1]   3/25
consider [1]   14/17
considered [1]
 13/22
Constitution [1]
 1/24
contacted [1]   9/1
contemplate [1]
 3/24
context [2]   9/14
 10/15
copy [2]   12/3 12/18
corrected [1]   9/4
course [2]   2/17
 14/17
court [20]
Court's [2]   2/8
 6/15
courtesy [1]   3/11
courthouse [3]   3/16
 3/20 4/2
courtroom [1]   4/2
courts [4]   1/23 5/8
 5/8 5/8
COVID [1]   16/8
COVID-19 [1]   16/8
cr [1]   1/4
crawls [1]   4/16
criminal [2]   1/3
 2/2
crux [1]   12/7
Curt [1]   7/18

**D**

D.C [1]   13/14
data [1]   7/23
date [2]   8/11 16/14
DC [3]   1/5 1/15
 1/25
de [1]   3/19
dealing [1]   8/21
decision [5]   13/23
 14/3 14/7 14/7
 14/12
defendant [10]   1/7
 1/17 2/4 2/5 13/18
 13/20 13/21 13/22
 14/2 14/13
delay [1]   8/10
dementia [1]   5/13
denied [1]   9/3
Department [1]   1/14
designate [1]   3/23
detail [1]   6/8
details [1]   14/1
determine [1]   8/19
developed [1]   13/9
different [1]   8/1
direct [1]   5/4
disagree [1]   12/20
discussion [1]
 12/19
disparage [1]   9/15
disparagement [1]
 8/17
DISTRICT [4]   1/1
 1/1 1/10 1/23
document [14]   5/13
 5/22 6/3 6/4 6/15

| D | | | |
|---|---|---|---|
| document... [9] 7/12 7/13 7/16 7/18 8/2 8/3 8/4 8/7 10/21 | few [1]   6/20 filings [1]   12/9 find [1]   11/13 first [2]   6/22 7/3 FL [1]   1/18 | HOOK [3]   1/22 16/3 16/14 hoping [1]   8/9 Hubbard [1]   4/10 hypothesis [1]   6/23 | M |
| documents [1]   5/9 DoD [1]   4/21 done [3]   6/22 12/15 13/3 | fleshed [1]   9/14 floored [2]   8/9 8/14 Florida [2]   4/7 13/14 | hypothesize [1] 6/23 I | mail [1]   8/21 mails [1]   9/2 making [3]   13/22 14/2 14/7 Malcolm [1]   4/21 |
| drive [1]   6/7 due [1]   14/17 duress [5]   5/5 5/6 5/11 5/18 14/6 during [1]   16/7 duty [3]   4/17 8/15 8/25 | following [1]   4/17 For the Defendant [1] 1/17 foregoing [1]   16/4 forensic [1]   5/16 forensics [1]   5/14 forge [1]   8/6 | indeed [1]   8/6 indicated [1]   2/14 inform [1]   13/15 instantaneous [1] 6/21 intel [1]   4/21 intend [1]   7/22 interest [2]   3/1 | many [1]   4/15 matter [5]   3/5 3/14 4/12 4/14 16/6 matters [2]   3/6 3/6 may [5]   7/6 8/18 8/24 11/2 13/13 May 31st [2]   7/6 8/24 |
| E | forgery [3]   3/10 5/20 7/14 | 3/7 interjected [1] | maybe [1]   14/10 mean [6]   5/17 6/2 6/20 9/14 9/15 11/9 |
| e-mail [1]   8/21 e-mails [1]   9/2 eight [1]   10/11 else [4]   4/3 6/6 13/4 14/24 elsewhere [1]   3/6 embarrassment [1] 3/21 end [1]   11/11 enough [2]   9/23 12/25 | form [5]   11/8 11/12 11/16 12/11 12/13 Fort [1]   8/24 forth [1]   6/1 forward [1]   10/7 frankly [1]   10/5 fraud [1]   3/10 Friday [1]   8/10 front [5]   6/24 9/2 10/19 12/18 13/7 | 11/10 intimated [1]   5/3 into [3]   6/15 10/10 10/15 involved [1]   6/8 issue [4]   2/13 4/8 4/14 8/16 issues [1]   3/22 J | meaning [1]   6/16 medical [1]   3/22 merit [1]   11/4 mind [1]   7/14 minutes [3]   6/9 6/12 6/20 MONA [2]   1/14 2/5 months [1]   9/17 more [1]   6/8 morning [1]   2/24 MOSS [1]   1/9 |
| enter [1]   13/23 entered [1]   6/15 entering [1]   14/14 entitled [1]   16/5 essentially [1]   4/1 estate [1]   5/12 everybody [1]   2/8 examination [1] 4/19 | G gave [1]   7/7 Gladwell's [1]   4/22 goes [2]   3/8 3/11 good [2]   2/24 9/5 Government [3]   1/14 2/5 2/15 guard [1]   13/19 | JEFF [3]   1/22 16/3 16/14 jeopardy [1]   11/2 JUDGE [1]   1/10 Justice [1]   1/14 K keep [1]   8/12 kick [1]   4/15 | motion [4]   5/3 8/11 12/5 15/2 Mr. [28] Mr. Curt [1]   7/18 Mr. Hodgkins [13] 4/19 5/21 6/3 6/24 7/3 7/5 7/11 8/22 10/19 11/5 11/12 12/14 12/17 |
| examiner [1]   7/18 examiners [1]   5/13 expecting [1]   5/18 expense [1]   7/21 expensive [1]   7/20 experience [2]   7/20 9/17 expert [5]   4/22 5/7 5/7 5/19 7/25 experts [2]   5/11 13/13 extend [1]   8/11 extended [2]   13/24 13/25 | guess [1]   13/6 guidance [1]   8/15 H handwriting [2]   5/7 5/19 happened [5]   4/20 7/3 9/8 11/4 14/11 happening [1]   12/16 happy [3]   2/22 11/21 12/2 hear [3]   2/22 13/11 14/12 hearing [2]   9/21 16/7 | kind [2]   4/22 8/11 kinds [1]   6/19 knew [1]   5/12 knowing [3]   3/11 13/23 14/2 knowingly [1]   14/8 known [1]   7/18 L lack [1]   9/19 last [1]   8/10 leave [1]   6/17 Leduc [11]   6/10 6/17 7/5 7/11 7/12 | Mr. Hodgkins' [2] 4/24 10/24 Mr. Leduc [11]   6/10 6/17 7/5 7/11 7/12 7/12 7/16 8/24 9/5 10/12 11/9 Mr. Leduc's [1]   6/4 Ms. [16]   2/12 2/19 2/21 3/13 4/3 6/10 7/4 8/17 9/1 9/4 9/16 9/24 10/22 10/23 12/21 14/23 |
| extensive [2]   10/9 10/18 F | helpful [1]   10/8 herself [1]   14/13 hide [1]   9/13 high [2]   3/5 4/7 himself [1]   14/13 | 7/12 7/16 8/24 9/5 10/12 11/9 Leduc's [1]   6/4 left [2]   6/5 6/13 levels [1]   3/17 | Ms. Sedky [8]   3/13 6/10 7/4 8/17 9/1 9/4 10/22 14/23 Ms. Stewart [8] 2/12 2/19 2/21 4/3 |
| facility [1]   5/15 fact [6]   7/23 8/18 9/15 10/13 11/25 14/3 facto [1]   3/19 facts [1]   13/9 Fair [1]   9/23 federal [1]   5/8 feel [4]   3/25 8/14 13/6 13/7 feeling [1]   9/11 felt [4]   9/25 10/3 10/6 13/15 | HODGKINS [17] Hodgkins' [2]   4/24 10/24 holding [1]   12/15 Holman [1]   2/6 Honor [12]   2/23 3/15 4/5 4/13 7/10 9/9 11/7 13/10 14/22 14/25 15/3 15/4 HONORABLE [1]   1/9 Hood [1]   8/24 | limitations [1] 16/9 line [1]   3/1 litigate [1]   10/5 local [1]   5/8 logs [1]   6/12 look [4]   5/24 8/15 10/12 11/19 looked [1]   5/24 lot [3]   6/7 9/18 13/17 lots [1]   3/16 | 9/16 9/24 10/23 12/21 much [4]   13/10 14/19 14/21 14/21 N name [1]   8/1 nationally [1]   7/18 necessary [1]   2/14 need [4]   3/16 13/1 13/8 13/13 needed [2]   8/23 10/6 needs [1]   13/3 new [3]   1/15 5/18 |

| N | | | |
|---|---|---|---|
| new... [1] 9/16 | Parwan [1] 5/15 | really [1] 13/11 | show [2] 7/6 10/4 |
| next [1] 10/23 | past [1] 7/20 | reason [3] 13/17 13/24 13/25 | showed [2] 5/22 7/7 |
| nobody [3] 2/10 12/8 13/12 | PAUL [4] 1/6 2/3 8/1 8/6 | reasons [1] 14/15 | side [1] 7/19 |
| nobody's [1] 7/8 | perhaps [1] 3/23 | rebroadcast [1] 2/9 | sign [3] 5/22 6/14 7/11 |
| none [1] 12/12 | permissible [1] 2/9 | received [2] 2/12 8/9 | signature [19] |
| notarized [1] 8/3 | person [2] 8/1 14/6 | receiving [1] 14/20 | signed [5] 5/25 6/4 6/17 8/23 10/21 |
| note [3] 8/2 9/5 16/7 | personal [1] 7/25 | recollection [1] 11/22 | significant [2] 4/19 5/4 |
| noted [1] 9/4 | Plaintiff [1] 1/4 | record [5] 2/9 2/17 3/23 4/25 10/16 | similar [2] 4/6 4/11 |
| notified [1] 6/10 | Plant [1] 1/18 | records [1] 5/16 | six [1] 3/18 |
| number [3] 5/2 5/8 5/17 | plea [22] | reflect [1] 10/16 | six-part [1] 3/18 |
| NW [1] 1/24 | pleading [2] 5/1 12/24 | relatively [1] 9/16 | someone [3] 6/6 8/5 14/14 |
| O | pleadings [1] 9/20 | remind [1] 2/8 | something's [1] 4/24 |
| oath [2] 10/25 11/5 | PLEASE [1] 16/7 | remotely [2] 16/5 16/9 | Sometimes [1] 4/21 |
| object [2] 9/9 9/22 | Plus [1] 5/13 | report [4] 4/17 7/21 8/11 8/15 | somewhere [2] 6/16 9/1 |
| objects [1] 12/8 | point [7] 3/5 4/10 4/12 7/9 9/7 10/8 13/2 | reported [1] 16/5 | sought [1] 5/11 |
| obligation [2] 10/1 10/3 | pointed [1] 11/7 | Reporter [3] 1/22 1/23 16/3 | specifically [3] 10/10 10/12 11/24 |
| occurred [2] 7/15 16/7 | pop [1] 14/19 | reporting [1] 16/9 | spend [1] 13/17 |
| off [1] 8/24 | popping [1] 8/12 | request [2] 2/25 3/2 | spent [2] 4/20 5/14 |
| offense [4] 6/11 11/9 11/17 11/18 | potential [1] 3/21 | reserve [1] 8/25 | standard [2] 3/5 4/11 |
| office [3] 6/4 7/3 7/6 | precedes [1] 12/19 | respect [1] 9/20 | standards [1] 4/10 |
| officer [3] 4/16 8/14 10/6 | prejudge [1] 12/22 | return [1] 6/9 | starting [1] 13/14 |
| Official [2] 1/23 16/3 | presence [1] 8/13 | returned [1] 7/13 | state [2] 5/8 7/9 |
| one [1] 9/8 | present [1] 14/11 | reviewed [2] 11/23 12/1 | statement [4] 6/11 11/8 11/17 11/18 |
| only [3] 6/22 9/17 10/20 | presumably [1] 9/13 | right [2] 8/4 14/18 | states [5] 1/1 1/3 1/10 2/3 8/4 |
| onto [1] 6/18 | pretrial [1] 2/6 | risk [1] 14/10 | status [4] 1/9 2/11 2/18 8/25 |
| open [1] 12/8 | previous [2] 5/3 5/12 | Road [1] 1/17 | step [1] 13/8 |
| opinion [2] 7/23 7/25 | privilege [1] 5/21 | rock [1] 4/16 | STEWART [10] 1/17 2/5 2/12 2/19 2/21 4/3 9/16 9/24 10/23 12/21 |
| order [6] 2/10 6/17 8/22 8/23 9/3 15/2 | problem [1] 12/6 | room [4] 1/15 1/24 6/18 6/18 | |
| ordered [1] 12/2 | proceed [3] 4/8 8/18 12/8 | rules [2] 2/9 4/6 | stint [1] 8/25 |
| ordinary [1] 2/17 | proceedings [4] 2/10 10/16 15/6 16/5 | S | strange [1] 9/18 |
| originals [1] 5/9 | process [1] 14/9 | salacious [1] 10/17 | strong [1] 11/22 |
| out [10] 3/10 4/16 5/11 6/7 9/7 9/10 9/14 9/20 10/9 14/19 | promises [1] 14/5 | same [1] 13/25 | stuff [1] 9/11 |
| | promptly [2] 10/1 15/2 | satisfied [3] 4/11 13/20 14/14 | subject [1] 16/8 |
| over [1] 4/16 | proper [1] 14/15 | Saturday [1] 8/10 | submitted [2] 5/9 6/3 |
| overly [2] 7/20 12/9 | properly [1] 13/9 | scan [1] 6/18 | substance [2] 10/4 10/10 |
| own [1] 14/7 | propose [1] 4/6 | screen [1] 12/4 | substantial [1] 3/7 |
| P | proposition [1] 12/20 | sealed [3] 3/14 3/24 4/12 | substantive [1] 9/11 |
| PACER [1] 6/18 | protective [2] 8/21 8/23 | sealing [5] 3/4 3/6 3/19 4/1 4/1 | suggest [1] 4/12 |
| packet [1] 7/7 | provided [1] 7/5 | SEDKY [10] 1/14 2/5 3/13 6/10 7/4 8/17 9/1 9/4 10/22 14/23 | sure [5] 9/11 13/19 14/2 14/4 14/13 |
| page [5] 5/22 7/8 7/11 7/21 8/24 | public [4] 2/25 3/3 3/7 3/11 | seeing [1] 5/6 | Swilley [1] 1/17 |
| pages [1] 10/11 | pull [1] 12/3 | seems [1] 4/15 | system [3] 6/16 6/19 7/17 |
| pandemic [1] 16/8 | put [2] 6/24 13/7 | sense [1] 11/2 | T |
| paper [2] 7/7 12/12 | putting [2] 9/19 11/2 | sensitive [1] 12/9 | table [2] 11/12 12/12 |
| papers [1] 12/16 | Q | sensitivity [1] 3/1 | talk [1] 2/13 |
| paragraph [1] 9/4 | Q1 [1] 8/7 | sent [3] 6/10 7/4 9/4 | talked [1] 13/12 |
| parking [1] 6/7 | quote [1] 11/22 | September [1] 1/5 | talking [1] 6/25 |
| part [3] 3/18 8/5 8/10 | R | services [1] 2/6 | technological [1] 16/9 |
| particularly [1] 3/6 | raise [10] 2/16 2/17 2/19 2/20 2/21 4/11 12/21 12/23 13/5 14/16 | set [1] 2/18 | telephone [2] 2/12 |
| | | several [2] 8/20 9/17 | |
| | raising [2] 9/20 10/23 | Shay [1] 2/6 | |
| | RANDOLPH [1] 1/9 | short [3] 4/15 8/3 8/25 | |
| | read [1] 10/14 | | |

## T

telephone... [1]  2/15
terms [2]  7/14 13/21
terrorists [1]  5/15
test [1]  3/18
testify [2]  7/22 8/7
Texas [1]  8/25
thereabouts [1]  3/19
therefore [2]  2/18 16/8
though [2]  13/6 13/7
thought [3]  4/6 5/6 5/10
throw [1]  9/10
timelines [1]  4/19
times [1]  4/15
today [5]  2/24 9/22 12/7 14/21 14/24
today's [2]  2/11 2/18
told [2]  7/5 11/1
tolerant [1]  9/17
took [1]  8/24
topic [2]  3/2 5/18
transcript [7]  1/9 10/11 11/20 11/21 12/3 12/10 16/4
true [2]  3/12 16/4
try [1]  7/19
turn [1]  6/12
turned [1]  9/5
type [2]  9/11 13/19

## U

U.S [2]  1/14 1/23
under [5]  2/8 5/11 10/25 11/5 14/6
understood [3]  10/14 10/20 11/25
undertook [1]  10/18
UNITED [4]  1/1 1/3 1/10 2/3
unorthodox [1]  9/18
up [10]  6/2 6/2 7/2 7/6 7/7 8/12 12/3 12/16 13/4 13/5
upload [1]  6/19
uploaded [1]  7/16
use [1]  9/6

## V

validate [1]  10/13
validated [1]  10/20
venue [1]  9/12
verify [1]  6/13
version [2]  8/3 8/3
video [4]  1/9 2/4 2/4 12/15
views [1]  3/13
vis [2]  11/24 11/24
vis-a-vis [1]  11/24
voluntarily [1]  14/7
voluntary [2]  13/23 14/2

## W

wait [2]  4/18 12/4
waiting [2]  6/7 12/6
warrant [1]  3/22
Washington [3]  1/5 1/15 1/25
way [1]  14/6
welcome [4]  12/21 12/22 13/5 14/16
weren't [1]  14/5
what's [1]  3/13
who's [1]  5/7
whole [1]  14/9
willing [2]  7/22 8/7
without [2]  5/23 8/12
witness [2]  6/6 8/19
word [1]  9/19
working [1]  5/14
world [1]  6/14
wrong [1]  4/24

## Y

year [1]  5/14
years [1]  4/20
yesterday [1]  11/23
York [1]  1/15